Chris L. Andrus
Law Office of Chris L. Andrus PLLC
Utah Bar Number: 10465
Post Office Box 859
Orem, UT 84059
Tel. (801) 810-7850
Fax  (801) 303-7378
chrisandrusjd@yahoo.com

Attorney for Debtor and Plaintiff, Taanen, LP,
Limited appearance for Tamio Stehrenberger,
Anna Stehrenberger, and E.S. (a minor child)

---

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>       Taanen, LP,<br><br>               Debtor. | **MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS**<br><br>Bankruptcy No. 19-24016<br>Adversary Proceeding No. 19-02105<br>Chapter 7<br><br>Honorable R. Kimball Mosier |

---

### MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS

---

COMES NOW the Debtor, TAANEN, LP, ("Debtor"), Tamio Stehrenberger ("Tamio"),

Anna Stehrenberger ("Anna") and E.S., a minor child ("E.S.") by and through the undersigned

counsel, and moves this court to quash alleged creditor Michiko Stehrenberger's ("Michiko") subpoenas for 2004 examinations and related subpoena duces tecum, or to modify the same, and for a protective order.

Michiko served a subpoena duces tecum on Debtor's counsel containing 38 multi-part requests for productions, including requests for personal information on a minor child, personal information of a general partner, documents from entities unrelated to Debtor and documents Michiko already obtained in a state court proceeding. Debtor served Michiko objections to the subpoena duces tecum prior to the date requiring the productions.

Michiko also served a first set of subpoenas for Rule 2004 examinations on Tamio and E.S., a minor child who is Michiko's nephew (and not a general partner), on Debtor's counsel, who did not represent any of these individuals in these bankruptcy proceedings at that time. This first set of subpoenas also set the examination date earlier than the 14 days notice required. Debtor's counsel objected to the first set of subpoenas due to the violation of the 14 day notice requirement. Michiko next served a second set subpoenas for a 2004 examination upon Debtor's counsel for the same individuals and also one for Anna. This second set contained four separate subpoenas, two upon each Tamio and E.S., each with a different examination date. Debtor's counsel again informed Michiko that service upon Debtor's counsel for the unrepresented parties was invalid, that E.S. is a minor, that the different subpoenas for each deponent was improper because the deponents, even if properly served, would not know which subpoena to appear on, and that the jurisdictional requirements for examining the deponents in California are not met by a subpoena issued solely by the Utah Bankruptcy Court.

This is similar to several state court proceedings wherein Michiko manipulated the rules, and severely abused the judicial process. She now seeks to the same in this proceeding, leading Debtor to seek a protective order. Michiko has been sanctioned by the Washington State Supreme Court for numerous filings, subpoenaing the trial judge and filing two actions against opposing counsel. She was sanctioned by the Utah State District Court for filing numerous

contemporaneous motions.  She filed three similar cases against the same opponent in multiple United States District Courts at approximately the same time.  She served over 400 discovery requests in Washington and over seven sets of multi-part excessive discovery in Utah.  Michiko has not changed and now seeks to commit the same abuses in this court, including placing an undue burden on Debtor and others by requesting excessive discovery, which discovery she has already obtained in the Utah state court proceedings.

Additionally, Michiko's alleged creditor claims against Debtor are not valid, as there has never been any agreement, judgment, debts or other obligation of Debtor to Michiko.  As such, Debtor has filed an adversary proceeding for declaratory judgment in order to establish that Michiko is not a creditor.

For these reasons Debtor respectfully requests this court to quash the subpoenas and issue a protective order as follows below.

## MEMORANDUM

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case in this district is proper.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Bankruptcy Rules 7030, 7034 and 9016, and Section 105(a) of the Bankruptcy Code give authority to grant this motion.

## PROCEDURAL BACKGROUND

3.      Debtor filed a voluntary petition on June 2, 2019 in the United States Bankruptcy Court for the District of Utah.  The sec. 341 Meeting of Creditors was held on July 29, 2019.

4.      On September 16, 2019 Debtor filed an adversary proceeding naming Michiko Stehrenberger and those that have assigned their interests to her ("Michiko") as defendants.

Among other issues, the adversary proceeding requests declaratory judgment that Michiko is not a creditor of Debtor.

5.      On August 5, 2019, Michiko served via email a Request for Production of Documents on Debtor's counsel.  See Exhibit A.

6.      On August 19, 2019, Debtor served objections to the Request for Production of Documents on Michiko.  See Exhibit B.

7.      On August 16, 2019, Michiko served subpoenas for Rule 2004 Examinations of Tamio Stehrenberger ("Tamio") and E.S., a minor child ("E.S.") on Debtor's counsel.  Counsel for Debtor objected to Michiko because the subpoenas did not provide for 14 days notice and were improperly served.

8.      On August 26 and September 5, 2019, Michiko again served Debtor's counsel via email and later U.S. Mail, four additional subpoenas for Rule 2004 Examinations of Tamio and E.S, and another on Anna Stehrenberger ("Anna").  There were two separate subpoenas for Tamio and E.S., each with different compliance dates: September 10, 2019, September 25, 2019. The compliance date for Anna was September 26, 2019 for Anna (which Michiko then orally tried to change to September 25, 2019).  Each of the examinations were to take place in California.  See Exhibit C.  Debtor's counsel objected to these subpoenas on grounds of improper service, the subpoenas not being issued from the court wherein the examinations were/are to take place, the service of three subpoenas at a time for each examinee leading to confusion as to how to comply, and service upon Debtor's counsel instead of the named person[1].

---

[1] Michiko served subpoenas for in multiple cases for multiple examinees, all to take place at the same place, date and time.

4

9.      After informal discussions between Michiko and Debtor's counsel, a formal and extended meet and confer was held on September 18, 2019.  Further meet and confers, even through September 24, 2019 were scheduled but due to scheduling conflicts and disagreements, they did not take place.  For example, Michiko would not even stipulate that E.S., who is her nephew and who she has personal knowledge of, is a minor child.

## RELIEF REQUESTED

10.     Debtor respectfully requests that all subpoenas for Rule 2004 examination and the related subpoena duces tecum be quashed and for a protective order that: 1) all discovery is made under adversary proceeding rules, 2) any discovery be abbreviated and excludes those items already provided in other actions, 3) the quashing of any and all subpoenas directed to E.S., prohibiting any future subpoena of E.S. and prohibiting Michiko from continuing to name E.S. in court documents, 4) circumscribing discovery to only those issues directly related to the nature of the creditor-debtor relationship, if any, between Michiko and Debtor, 5) all discovery requests must state with particularity the discovery sought, 6) deposition of only one general partner of Debtor, and 7) an order similar to that of the Utah State court order proscribing Michiko from filing multiple motions at similar times.

11.     Debtor also requests sanctions be imposed on Michiko for violation of Fed. R. Civ. P. 45(d)(1).

## ARGUMENT

### A.  Improper Service; No Good Cause; Undue Burden; Sanctions

12.     Bankruptcy Rule 9016 incorporates Rule 45 of the Federal Rules of Civil Procedure for the service of subpoenas.  In relevant part: "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the

fees for 1 day's attendance and the mileage allowed by law," and

> A subpoena may command a person to attend a trial, hearing, or deposition *only* as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer.

Fed.R.Civ.P. 45(b)(1) and 45(c)(1) (emphasis added).

13.    Fed.R.Civ.P. 45(d)(3) states:

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

14.    Subpoenas also must generally be served directly on the named person according to Rule 45(b)(1), not via mail or on counsel:

> *Rule 45(b)(1)* provides in pertinent part that "[s]erving a subpoena requires delivering a copy to the named person." *Fed.R.Civ.P. 45(b)(1)*. Wright & Miller explain that the "longstanding interpretation of *Rule 45* has been that personal service of subpoenas is required," based on the literal construction of the word "delivering" in the rule:
> The use of the word "delivering" in *subdivision (b)(1)* of the rule with reference to the person to be served has been construed literally. Under this construction, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness. Moreover, *unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice.*
> 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2454 (2d ed. 2007); *see e.g., Briarpatch Ltd., L.P. v. Geister Roberdeau, Inc., 2006 U.S. Dist. LEXIS 28960, 2006 WL 1311967 (S.D.N.Y. 2006)*; *Chima v. U.S. Dept. of Defense, 23 Fed Appx. 721, 724 (9th Cir. 2001)* (District court did not erred in refusing to compel defense witnesses to comply with subpoenas served by mail rather than personal service.); *Agran v. City of New York, 1997 U.S. Dist. LEXIS 2577, 1997 WL 107452, at \*1 (S.D.N.Y. March 11, 1997)* (holding that the court was without authority to sanction service of a

6

subpoena by mail); *F.T.C. v. Compagnie e Saint-Gobain-Pont-A-Mousson, 205 U.S. App. D.C. 172, 636 F.2d 1300, 1312-13 (D.C.Cir. 1980)* ("[C]ompulsory process [under *Rule 45*] may be served upon an unwilling witness only in person.").

*Bank of Okla. V. Arnold*, 2008 U.S. Dist. LEXIS 12677; 2008 WL 482860 (N. Dist. Okla.)[2] (emphasis added)

15.     Michiko's seven subpoenas violate each the above rules and this court should quash the subpoenas.  First, the subpoenas were served by email and mail on Debtor's counsel and not on the named persons.  Second, the subpoenas, which demand compliance in California, were issued by the Bankruptcy Court for the District of Utah and no transfer to nor issuance of the subpoenas was made by the California court where the examinations are to take place.  Last, Michiko has sought to impose an undue burden on Debtor by demanding 68 multi part requests for production of documents, when any such documents in the custody and control of Debtor were already provided to Michiko in the Utah State court action(s).

16.     Michiko's requests for Rule 2004 examinations should also be quashed because she has not demonstrated, and cannot demonstrate, "good cause" as to why she requires documents already in her possession.  See, e.g., *In re Wilcher*, 56 B.R. 428, 434 (Bankr.  N.D. Ill. 1985) ("[O]nce a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."); see also *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984) (same).  The  burden of  showing good cause is an affirmative one that a proponent can meet only by showing that the materials are "necessary to establish the movant's claim... or for the protection of its legitimate interests" or "that denial of

---

[2] *Bank of Okla.* provides a comprehensive overview of the standards for service.

production would cause undue hardship or injustice." *In re Youk-See,* 450 B.R. 312, 320 (Bankr.

D. Mass. 2011) (internal citations omitted).  Michiko cannot demonstrate any of the foregoing

bases to sustain her request.  Michiko does not even have standing in this case because there has

been no established relationship between her and Debtor.

      17.     Fed.R.Civ.P. 45(d)(1) provides:

> *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for
> issuing and serving a subpoena must take reasonable steps to avoid imposing undue
> burden or expense on a person subject to the subpoena. The court for the district where
> compliance is required must enforce this duty and impose an appropriate sanction—
> which may include lost earnings and reasonable attorney's fees—on a party or attorney
> who fails to comply.

      18.     Michiko knows that she is imposing an undue burden on Debtor by demanding

excessive documents that she already has in her possession.  She also seeks to impose an undue

burden by demanding documents from Debtor relating to entities unrelated to, and not in control

or custody of Debtor, personal information about minor children, personal information of

partners and the seeking of excessive discovery.  In no way did Michiko even seek to comply

with Fed.R.Civ.P. 45(d)(1) prior to serving her subpoena duces tecum.  For such violations,

Debtor respectfully requests this court to impose sanctions on Michiko consistent with Rule

45(d)(1).

**B.  Due to the filing of Debtor's adversary proceeding, all discovery should be
conducted under Bankruptcy Rule 7001 et .seq., including Rules 7026-7037.**

      19.     Courts regularly have noted that Rule 2004 cannot be used to avoid the limitations

of the formal discovery rules. See *In re  Snyder*, 52 F.3d 1067 (5th Cir. 1995) (unpublished)

(affirming bankruptcy and district court's denial of a Rule 2004 request based on the movant's

"motive" to develop personal litigation claims and avoid stricter discovery rules).  Here, because

Debtor has already instituted an adversary proceeding in this case, there must be compliance

with the formal rules which govern

20.    "The well recognized rule is that once an adversary proceeding ... has been

commenced, discovery is made pursuant to Fed.R. Bankr.P. 7026 et seq., rather than by a Fed.R.

Bankr.P. 2004 examination." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.

N.D.N.Y. 1996); see also *First Financial Sav. Assoc. v. Kipp* (In re  Kipp), 86 B.R. 490, 491

(Bankr. W.D.Tex. 1988) quoting 8 COLLIER ON BANKRUPTCY¶ 2004.03[1] ("[O]nce an

actual adversary proceeding has been initiated, the discovery devices provided for in Rules

7026–7037 apply and Rule 2004 should not be used.").  The basis for this prohibition "lies in the

distinction between the broad fishing expedition-like nature of the Rule 2004 exam ... and the

more restrictive nature of discovery under Fed.R. Bankr.P. 7026–7037." *In re 2435 Plainfield*

*Ave., Inc.*, 223 B.R. 440, 456 (Bankr. D.N.J. 1998) (internal citations omitted). A Rule 2004

examination generally calls for a broad investigation and can relate to  "any matter which may

affect the administration of the debtor's estate, or to the debtor's right to a discharge."

Bankruptcy Rule 2004(b).  Under the more formal rules of discovery on the other hand, a party

can only obtain discovery "regarding any nonprivileged matter that is relevant to any party's

claim or defense." Fed.R.Civ.P. 26(b)(1).

21.    The basis of thought for prohibiting Michiko's 2004 examination makes particular

sense in this case because the is a question as to whether she even has standing as a creditor.  By

seeking to obtain information pursuant to Rule 2004, Michiko is attempting to circumvent the

more cumbersome discovery rules that govern adversary proceedings.  This Court should not

allow this. See, e.g., *In  re  2435 Plainfield Ave., Inc.*, 223 B.R. at 456 quoting NORTON

BANKRUPTCY LAW AND PRACTICE§  141:35 (2d ed. 1998)(noting that "courts will usually

not allow a 2004 exam where an adversary proceeding is pending, because the party requesting

9

the exam is likely seeking to avoid the procedural safeguards of Bankruptcy Rules 7026–7037").
To the extent that Michiko believes she is entitled to discovery (which the Debtor in any event
disputes), she is free to utilize the discovery tools available to her under the framework of the
adversary proceeding.  What is clear, though, is that it should not be permitted to circumvent
those rules through the use of a Rule 2004 subpoena.

### C.  Michiko's history of vexatious litigation demonstrates the need for a protective order in this case.

22.    Michiko has already been sanctioned by the Washington State Supreme Court and
a Utah State District Court for excessive filings and discovery, who have otherwise opined on
her improper filings:

23.    "After [Michiko] filed several additional motions, including motions to subpoena
the trial judge and members of this court who decided her case, the trial judge entered an order
restricting [Michiko] from filing additional motions without the court's leave."  See Exhibit D,
pp. 1-2.

24.    "[T]he trial court did not abuse its discretion in imposing filing restrictions on
[Michiko]. As the court noted, [Michiko's] case had been decided on the merits and affirmed on
appeal. After her appeal, the trial court had denied her post judgment motions. After this denial,
she moved to subpoena the trial judge and the panel of this court who decided her case on
appeal. The trial court determined that these continued post judgment motions were 'without
legal or factual basis [and] constitute[d] abuse of the judicial process.'"  See Exhibit D, p.4.

25.    Further, the threat of paying attorney fees or other sanctions does not seem to
dissuade Michiko from abuse of judicial process.  In Washington State, the trial court awarded
costs and attorney fees to her opposing party in the amount of $98,446.76 on a $46,598.53

10

judgment. The trial court stated that the amount of fees and costs was "reasonable and necessary to prosecute plaintiff's claims in light of defendant's protracted defense of this matter."[3] See Exhibit E, pp. 1, 5.

26. Michiko now attempts to use the same tactics in subpoenas, including a overbroad and unduly burdensome subpoena duces tecum and subpoenas for Rule 2004 examinations.

27. Fed.R.Civ.P. 26(c), incorporated via Bankruptcy Rule 7026, provides this court with authority to issue a protective order and states:

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(A) forbidding the disclosure or discovery;
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
(E) designating the persons who may be present while the discovery is conducted;
(F) requiring that a deposition be sealed and opened only on court order;
(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

28. Michiko has already demonstrated that she will embark on excessive discovery in this case and a protective order is respectfully requested in accordance with the Relief Sought

---

[3] Opposing counsel in the Washington State cases also felt that Michiko's abuse of the judicial process was overboard and caused undue burden on his client. He stated in one brief, The Superior Court recognized that Stehrenberger is a vexatious litigant. Having taken her case all the way up to the Washington Supreme Court, she has apparently decided to start over again by attacking the Superior Court, this Court, and the entire judicial-retirement system," and "The Superior Court properly denied [Michiko's] motions under CR 59 and 60, and barred [her] from continuing her vexatious litigation."  See Exhibit F, Brief of Respondent JPMorgan Chase Bank, N.A., at pp.4, 9.

above.  Michiko has already submitted 38 multi part requests for productions, including

productions of personal information of a minor (including a birth certificate and similar identity

documents), personal information of others, documents from entities unrelated to debtor and

information on the attorney-client relationship.  Even subtracting for the two that did not comply

with the 14 day notice requirement, four subpoenas have been served on two individuals (one of

whom she knows is a minor child and not a general partner) leaving Debtor (and the examinees)

to speculate as to what is being asked for compliance.  Further, and as illustrated above, any

depositions and the rules for conducting them should follow the adversary proceeding rules of

discovery under Rule 7026, et. seq.  For these reasons Debtor respectfully requests a protective

order in accordance with that illustrated above and whatever additional relief the court deems is

reasonable.

Dated: September 23, 2019

LAW OFFICE OF CHRIS L. ANDRUS PLLC


 _/s/ Chris Andrus_____
Chris Andrus, Esq.
*Attorney for Debtor and Plaintiff, Taanen, LP*

## CERTIFICATE OF SERVICE

On the dates set forth below I served, or caused to be served, the following:

Documents served:

**MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Mode of service:

Electronic Filing by the court ECF system upon:

J. Kevin Bird, Chapter 7 Trustee, Bird & Fugal, 384 E 720 South, Suite 201 Orem, UT 84058    jkevinbird@birdfugal.com

U.S. Trustee, USTPRegion19.SK.ECF@usdoj.gov

And via email and U.S. Mail on September 25, 2019 to:

Michiko Stehrenberger, 431 Lakeview Road, Lynwood, WA 98087 document.request@gmail.com

I certify, under penalty of perjury, that the foregoing is true and correct and that this Certificate of Service was executed by me on this following date.

DATED:   September 24, 2019

 /s/ Chris Andrus_____
Chris Andrus

# EXHIBIT A

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **UTAH**

In re **TAANEN, LP**
_____
Debtor

_(Complete if issued in an adversary proceeding)_

_____
Plaintiff
v.
_____
Defendant

Case No. **19-24016**

Chapter **7**

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **TAMIO STEHRENBERGER (listed as 10% partner of debtor TAANEN, LP)**
_(Name of person to whom the subpoena is directed)_

[X] _Production:_ YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See accompanying list (#1-36)**

| PLACE    By email delivery to document.request@gmail.com or by mutually agreed secure electronic delivery (DropBox, ShareFile, etc.) | DATE AND TIME August 19, 2019 by 12:00 noon |
|---|---|

[ ] _Inspection of Premises_: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/23/19

CLERK OF COURT

OR

_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_____ , who issues or requests this subpoena, are:
USBC   350 S Main St. #301  SLC Ut. 84101   801-524-6687

Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

District of Utah, Bankruptcy Court case no. 19-24016
Debtor: Taanen, LP
Re: Subpoena Duces Tecum/documents
to partner Tamio Stehrenberger

1.  Any Partnership agreements for Taanen, LP, related to any of its partners at any time
    during its existence, including any rough drafts, executed copies, amendments,
    modifications, etc..

2.  Any documents evidencing the date of birth and age of each of the Partners of Taanen,
    LP.

3.  Any documents evidencing any votes by any partners of Taanen, LP at any time during its
    existence.

4.  Any documents evidencing any formation/organization and documents setting forth the
    purpose of Taanen, LP.

5.  On July 29, 2019, Anna Stehrenberger stated to the Chapter 7 Trustee that Taanen, LP
    was set up as a family trust. Please produce all documents setting forth the structure and
    beneficiaries of Taanen, LP and/or any trust.

6.  Any documents related to any stock, shares, or other interests related to Taanen, LP
    whether in BSSP, Bassline Productions, Inc., Reve Technologies, Inc., or any other
    entity/entities.

7.  Any documents related to any payments received by Taanen, LP during its existence
    (including but not limited to any payments for the 2015 sale of Reve Technologies, Inc.
    stock/shares, and any other payments received by Taanen, LP from any other person or
    entity/entities).

8.  Any documents evidencing the total dollar amount that Taanen, LP received related to the
    stock/shares sales of Reve Technologies, Inc. and/or BSSP.

9.  Any documents evidencing the total dollar amount that Tamio Stehrenberger received
    related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.

10. Any documents evidencing the total dollar amount that Anna Stehrenberger received
    related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.

11. Any documents evidencing the total dollar amount that Enzo Stehrenberger received
    related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.

12. Any documents evidencing the total dollar amount that any other person or entity

(besides Tamio, Anna, or Enzo Stehrenberger) received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.

13. Any documents related to any payments or disbursements from Taanen, LP of any money received for the sale of Reve Technologies, Inc. or BSSP stock/shares to any of its partners or others, if different from above.

14. Any documents related to any capital contributions into Taanen, LP during its existence by any of its partners or by any other person or entity.

15. Any documents related to any investment or money or property loaned or transferred into Taanen, LP during its existence by any of its partners or by any other person or entity.

16. Any documents containing information sufficient to identify and contact any partner, person or entity who has made any capital contribution to Taanen, LP.

17. Any documents containing information sufficient to identify and contact any partner, person or entity who has made any investment of money or property into Taanen, L, whether by loan, transfer, or other method.

18. Any documents related to any return of capital contributions, investment, money, property, or payments made by or from Taanen, LP to any of its partners  or any other person or entity.

19. Any documents related to any payments made to others by Taanen, LP during its existence (including but not limited to any payments to acquire BSSP, Bassline Productions, Inc., PVRE, Pavilion Energy Resources, Inc., and/or any other entity/entities).

20. Complete copies of all financial account statements related to any accounts in which Taanen, LP has or had an interest at any time, whether directly or indirectly, or in its own name or in the name of another person or entity.

21. Complete copies of all federal and state tax filings (including tax returns, form 1065 partnership returns, k-1 partnership documents, California Franchise Tax Board tax filings,Utah tax filings) related to Taanen, LP and/or its partners at any time, along with any correspondence, notices, assessments, or other communications to and from Taanen, LP to and from the taxing authority/authorities.

22. Complete copies of all federal and state tax filings for any individual partner of Taanen, LP, including Tamio Stehrenberger, Anna Stehrenberger, and Enzo Stehrenberger, as well as any other person(s) or entity/entities related to Taanen, LP.

23. Complete copies of any fee agreement, attorney-client agreement, letter of engagement, or other arrangement for legal representation by Mr. Chris Andrus in this bankruptcy case

number 19-24016. *Relevance: to determine the source of money for attorney fees in this case vs. the State court cases and use of fees within the clawback period.*

24. Complete copies of any invoice and any documents evidencing payment to Mr. Chris Andrus as counsel for Taanen, LP in this bankruptcy case number 19-24016. *Relevance: to determine the source of money for attorney fees in this case vs. the State court cases and use of fees within the clawback period.*

25. Complete copies of any fee agreement, attorney-client agreement, letter of engagement, invoices, and documents evidencing payment(s) and/or retainer or advance payment(s), or other arrangement(s), for legal representation by Mr. Chris Andrus to Taanen, LP in American Fork case number 160100092 and/or Provo case number 160400620, and/or any related cases. (Purpose: to contrast the payment of fees for the bankruptcy case as opposed to fees for the state court cases). *Relevance: to determine the source of money for attorney fees in this case vs. the State court cases and use of fees within the clawback period.*

26. Any documents related to the total amount paid on Taanen, LP's behalf, directly or indirectly, to Mr. Chris Andrus related to the American Fork and Provo cases to date (to contrast with the any amounts paid related to the bankruptcy case 19-24015 and 19-24016). *Relevance: to determine the source of money for attorney fees in this case vs. the State court cases and use of fees within the clawback period.*

27. Vehicle Identification Numbers (VIN#s), vessel identification numbers, or any other serial numbers of identification numbers for any property owned at any time by Taanen, LP.

28. Copies of any titles and any title transfers or other ownership transfers to or from Taanen, LP at any time of any property, including vehicles, vessels, intangibles (copyrights, patents, trademarks) or any other property.

29. Any documents related to the EIN number and entity number or other number/code identifying the version of Taanen, LP that filed for bankruptcy protection in this case number 19-24016. (Taanen, LP was formed and dissolved multiple times and received different numbers each time).

30. Documents related to the formation and dissolution of each of the multiple versions of Taanen, LP that was formed by Tamio Stehrenberger and/or Anna Stehrenberger and/or Enzo Stehrenberger at any time (whether or not limited to Utah entities or entities in other states or jurisdictions).

31. Any documents related to overseas or offshore accounts or money or property (including intangible property, including rights to receive payment) held outside the United States related to any money received by any version of Taanen, LP during its existence.

32. Any documents related to overseas or offshore accounts or money or property (including intangible property, including rights to receive payment) held outside the United States related to any money paid by any version of Taanen, LP during its existence.
29. Any documents related to any real property in which any version of Taanen, LP has or had an interest at any time.

33. Any documents related to any money or property received by any version of Taanen, LP related to Tamio Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.

34. Any documents related to any money or property received by any version of Taanen, LP related to Anna Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.

35. Any documents related to any money or property received by any version of Taanen, LP related to Enzo Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.

36. Any documents related to any money or property disbursed or transferred out of any version of Taanen, LP that resulted in its accounts or holdings being reduced to zero or any other amount upon which the decision to file for bankruptcy protection was based.

# EXHIBIT B

Chris L. Andrus
Law Office of Chris L. Andrus PLLC
Utah Bar Number: 10465
Post Office Box 859
Orem, UT 84059
Tel. (801) 810-7850
Fax  (801) 303-7378
chrisandrusjd@yahoo.com

Attorney for Debtor, Taanen, LP

---

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| In re:<br><br>        Taanen, LP<br><br>                                Debtor. | Bankruptcy No. 19-24016<br>Chapter 7<br><br>Honorable R. Kimball Mosier<br><br>Filed by ECF |

---

### OPPOSITION TO SUBPOENA FOR PRODUCTION OF DOCUMENTS

---

Debtor Taanen, LP ("Taanen"), by and through its attorney, responds and objects to alleged Creditor Michiko Stehrenberger's ("Creditor") Subpoena to Produce Documents as follows:

### PRELIMINARY STATEMENT

1. Taanen's investigation and development of all facts and circumstances relating to the request for documents is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Taanen's rights.

2. By making the accompanying responses and objections to Creditor's request for documents, Taanen does not waive, and hereby expressly reserves, its right to assert any and all

1

objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, standing, competency, relevancy, materiality, and privilege. Further, Taanen makes the responses and objections herein without in any way implying that it considers the request and responses to the request to be relevant or material to the subject matter of this action or any other action.

3. Taanen will produce responsive documents only to the extent that such documents are in its possession, custody or control, are not an undue burden and are not already in the possession of Creditor.  Taanen's possession, custody, or control does not include any constructive possession that may be conferred by Taanen's right or power to compel the production of documents or information from third parties.

4. A response to a document request stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Taanen performed or omitted to perform any of the acts described in the document request or definitions and/or instructions applicable to the document request, or that Taanen acquiesces in the characterization of the conduct or activities contained in the document request or definitions and/or instructions applicable to the document request.

5. Taanen expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## GENERAL OBJECTIONS

1. Taanen objects to the subpoena in its entirety in that the subpoena was not served upon an officer or other person with corporate authority as required under the Federal Rules of Civil Procedure and incorporated Federal Rules of Civil Procedure 45 and 4.

2. Taanen objects to each document request in that Creditor and/or Creditor's assignee's lack standing to make such request.  Creditor is only listed as a disputed Creditor, and Creditor has not offered any proof of claim and has no claim to the assets of Taanen.  Creditor has only filed an action against Taanen on the theory of a fraudulent transfer but has obtained no such judgment.  Further, Creditor fails to provide evidence of any such fraudulent transfers.

3. Taanen objects to each document request as overbroad, excessive and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Creditor from Creditor's own files, from documents or information in Creditor's possession, or from documents or information previously produced to Creditor.  Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such request is substantially greater for Taanen than for Creditor.  This objection encompasses, but is not limited to, documents previously produced by the Debtor to Creditor in the course of Creditor's investigation, discovery process, trial and/or action generally. All such documents and information will not be produced.  Specifically, Taanen objects to each document request in that the information requested by Creditor is already in Creditor's possession via

2

discovery or otherwise from a Utah State court proceedings case numbers 160400620, 160100092 and 080402986.  In the two earlier cases Creditor made multiple discovery requests including making over seven different rounds of discovery requests in case number 160100092 alone, in violation of the state court's discovery rules.  Creditor now attempts to require 36 multi-part productions, of which she is already in possession of the requested information.  Creditor's discovery requests are simply an attempt to impose an undue burden and excessive expense on Debtor.

4. Taanen objects to each document request to the extent that it calls for production protected by attorney-client privilege and/or a privilege log for internal documents of Taanen. A request for such a log is unreasonable and unduly burdensome in light of the work product doctrine, and other privileges protecting such internal documents from discovery.

5. Creditor has not provided adequate time to respond to the requests for production and requests legally private or otherwise privileged information and is not reasonably calculated to lead to the discovery of admissible evidence.  Taanen further objects to Creditor's requests as not relevant.

6. Taanen incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Taanen does not waive its right to amend its responses.

## OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

DOCUMENT REQUEST NO. 1:  *1. Any Partnership agreements for Taanen, LP, related to any of its partners at any time during its existence, including any rough drafts, executed copies, amendments, modifications, etc..*

**Response:  Any such document had by Debtor are already in Creditor's possession. After engaging in diligent search and reasonable inquiry, Taanen can find no additional documents to produce.**

DOCUMENT REQUEST NO. 2:  *Any documents evidencing the date of birth and age of each of the Partners of Taanen, LP.*

**Response:  Taanen objects to such production as the requested information is private and not relevant, and calls for information regarding persons not a part of the current action.**

DOCUMENT REQUEST NO. 3:  *Any documents evidencing any votes by any partners of Taanen, LP at any time during its existence.*

3

**Response:  Taanen objects in that the term "votes of any partners" is ambiguous. Further, any minutes or other proceedings in Taanen's possession has been previously provided to Creditor.**

DOCUMENT REQUEST NO. 4: *Any documents evidencing any formation/organization and documents setting forth the purpose of Taanen, LP.*

**Response:  After engaging in diligent search and reasonable inquiry, Taanen states it has already provided any such documents in its possession to Creditor in other proceedings.  Additional documents available online are also already in Creditor's possession.**

DOCUMENT REQUEST NO. 5: *On July 29, 2019, Anna Stehrenberger stated to the Chapter 7 Trustee that Taanen, LP was set up as a family trust. Please produce all documents setting forth the structure and beneficiaries of Taanen, LP and/or any trust.*

**Response:  Taanen objects to Creditor's characterization regarding the testimony of Anna Stehrenberger.  The request is also no relevant.  Further, after engaging in diligent search and reasonable inquiry, Taanen is unable to comply with this demand because any such documents are either unavailable or have previously been produced to Creditor in prior proceedings.**

DOCUMENT REQUEST NO. 6: *Any documents related to any stock, shares, or other interests related to Taanen, LP whether in BSSP, Bassline Productions, Inc., Reve Technologies, Inc., or any other entity/entities.*

**Response:  Taanen objects to the request for "BSSP" as such term is ambiguous. The remaining requests are had in Creditor's possession via online through the Securities and Exchange Commission's EDGAR system or other resources accessed by Creditor. After diligent search, Taanen can find no additional documents but is willing to supplement such if they should become available.**

DOCUMENT REQUEST NO. 7: *Any documents related to any payments received by Taanen, LP during its existence (including but not limited to any payments for the 2015 sale of Reve Technologies, Inc. stock/shares, and any other payments received by Taanen, LP from any other person or entity/entities).*

**Response:  Taanen objects to such request in that all information in the custody of Taanen has previously been presented to Creditor and/or Creditor already has all such information that is available to Taanen.  Additionally, there is no time limit on the request for any "any other payments … from any other person or entity/entities" making such request unduly burdensome and not relevant for any extended time periods beyond four years.**

4

DOCUMENT REQUEST NO. 8: *Any documents evidencing the total dollar amount that Taanen, LP received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.*

**Response:  See response to Request number 6, above, which is incorporated herein.**

DOCUMENT REQUEST NO. 9: *Any documents evidencing the total dollar amount that Tamio Stehrenberger received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.*

**Response:  Taanen objects in tat the term "BSSP" is ambiguous and undefined. After engaging in diligent search and reasonable inquiry, Taanen states it has not such documents that have not previously been provided to Creditor, or that Creditor otherwise already has in her possession.**

DOCUMENT REQUEST NO. 10: *Any documents evidencing the total dollar amount that Anna Stehrenberger received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.*

**Response:  Taanen objects in that the term "BSSP" is ambiguous and undefined. After engaging in diligent search and reasonable inquiry, Taanen states it has not such documents that have not previously been provided to Creditor, or that Creditor otherwise already has in her possession.**

DOCUMENT REQUEST NO. 11: *Any documents evidencing the total dollar amount that Enzo Stehrenberger received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.*

**Response:  Taanen objects in tat the term "BSSP" is ambiguous and undefined. After engaging in diligent search and reasonable inquiry, Taanen states it has not such documents that have not previously been provided to Creditor, or that Creditor otherwise already has in her possession.**

DOCUMENT REQUEST NO. 12: *Any documents evidencing the total dollar amount that any other person or entity (besides Tamio, Anna, or Enzo Stehrenberger) received related to the stock/shares sales of Reve Technologies, Inc. and/or BSSP.*

**Response:  Taanen objects in that the request is overly broad and ambiguous. Taanen does not have custody or control over the documents of any "other person or entity" as such may be reasonably defined.**

DOCUMENT REQUEST NO. 13: *Any documents related to any payments or disbursements from Taanen, LP of any money received for the sale of Reve Technologies, Inc. or BSSP stock/shares to any of its partners or others, if different from above.*

**Response:  Taanen objects in that the request is overly broad and ambiguous.**

DOCUMENT REQUEST NO. 14: A*ny documents related to any capital contributions into Taanen, LP during its existence by any of its partners or by any other person or entity.*

5

**Response:  Taanen objects to such request in that it calls for documents that may not be in the custody of Debtor, and is excessive.  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 15: *Any documents related to any investment or money or property loaned or transferred into Taanen, LP during its existence by any of its partners or by any other person or entity.*

**Response:  Taanen objects to such request in that it calls for documents that may not be in the custody of Debtor, and is excessive.  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 16: *Any documents containing information sufficient to identify and contact any partner, person or entity who has made any capital contribution to Taanen, LP.*

**Response:  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents in Taanen's custody have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 17: *Any documents containing information sufficient to identify and contact any partner, person or entity who has made any investment of money or property into Taanen, L, whether by loan, transfer, or other method.*

**Response:  Taanen objects to such request in that it is vague and ambiguous.  After engaging in diligent search and reasonable inquiry as to what Taanen believes the request desires, Taanen responds that any such documents have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 18: *Any documents related to any return of capital contributions, investment, money, property, or payments made by or from Taanen, LP to any of its partners or any other person or entity.*

**Response:  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents in it custody have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 19: *Any documents related to any payments made to others by Taanen, LP during its existence (including but not limited to any payments to acquire BSSP, Bassline Productions, Inc., PVRE, Pavilion Energy Resources, Inc., and/or any other entity/entities).*

**Response:  Taanen objects to such request in that it is vague and ambiguous, including, without limit, "payments," "BSSP," "PVRE," and "and/or any other entity." Taanen further objects in that the request calls for documents beyond four years and therefore not relevant.  Taanen responds that any other such documents have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 20: *Complete copies of all financial account statements related to any accounts in which Taanen, LP has or had an interest at any time, whether directly or indirectly, or in its own name or in the name of another person or entity.*

**Response:  Taanen objects to such request in that it is overly broad, excessive, vague and ambiguous.  Such request, without time limits, is also not relevant.  Any other such documents have already been produced to Creditor in previous proceedings.**

DOCUMENT REQUEST NO. 21: *Complete copies of all federal and state tax filings (including tax returns, form 1065 partnership returns, k-1 partnership documents, California Franchise Tax Board tax filings,Utah tax filings) related to Taanen, LP and/or its partners at any time, along with any correspondence, notices, assessments, or other communications to and from Taanen, LP to and from the taxing authority/authorities.*

**Response:  Taanen responds that any such documents available to it have already been produced to Creditor in previous proceedings.  Taanen further objects insomuch as the request calls for information regarding persons not a part of the current action.**

DOCUMENT REQUEST NO. 22: *Complete copies of all federal and state tax filings for any individual partner of Taanen, LP, including Tamio Stehrenberger, Anna Stehrenberger, and Enzo Stehrenberger, as well as any other person(s) or entity/entities related to Taanen, LP.*

**Response:  Taanen objects to such request in that it calls for private and confidential information of persons not a party to the current action, and is excessive, overly broad and not relevant.**

DOCUMENT REQUEST NO. 23: *Complete copies of any fee agreement, attorney-client agreement, letter of engagement, or other arrangement for legal representation by Mr. Chris Andrus in this bankruptcy case number 19-24016.*

**Response:  Taanen objects to such request in that it is privileged and not relevant. The amount paid for representation is contained in the statement of financial affairs and is not excessive.**

DOCUMENT REQUEST NO. 24: *Complete copies of any invoice and any documents evidencing payment to Mr. Chris Andrus as counsel for Taanen, LP in this bankruptcy case number 19-24016.*

      **Response:  Taanen objects to such request in that it is privileged and not relevant. The amount paid for representation is contained in the statement of financial affairs and is not excessive.**

DOCUMENT REQUEST NO. 25: *Complete copies of any fee agreement, attorney-client agreement, letter of engagement, invoices, and documents evidencing payment(s) and/or retainer or advance payment(s), or other arrangement(s), for legal representation by Mr. Chris Andrus related to Taanen, LP in American Fork case number 160100092 and/or Provo case number 160400620, and/or any related cases. (Purpose: to contrast the payment of fees for the bankruptcy case as opposed to fees for the state court cases).*

      **Response:  Taanen objects to such request in that it is excessive, privileged and not relevant.  Any contract between bankruptcy fees and state court fees is similarly not relevant.  The amount paid for representation is contained in the statement of financial affairs and is not excessive.  Any fees paid in the state court case(s) are at a bona fide, arm's length transaction for value and should not be subject to any clawback provision.**

DOCUMENT REQUEST NO. 26: *Any documents related to the total amount paid on Taanen, LP's behalf, directly or indirectly, to Mr. Chris Andrus related to the American Fork and Provo cases to date (to contrast with the any amounts paid related to the bankruptcy case 19-24015 and 19-24016).*

      **Response:  Taanen objects to such request in that it is vague, excessive, privileged and not relevant.  Taanen further objects in that such request may call for information on persons not a party to the bankruptcy action. The amount paid for representation is contained in the statement of financial affairs and is not excessive.  Any fees paid in the state court case(s) are at a bona fide, arm's length transaction for value and should not be subject to any clawback provision.**

DOCUMENT REQUEST NO. 27: *Vehicle Identification Numbers (VIN#s), vessel identification numbers, or any other serial numbers of identification numbers for any property owned at any time by Taanen, LP.*

      **Response:  Taanen objects to such request in that it is excessive, overly broad and not relevant.**

DOCUMENT REQUEST NO. 28: *Copies of any titles and any title transfers or other ownership transfers to or from Taanen, LP at any time of any property, including vehicles, vessels, intangibles (copyrights, patents, trademarks) or any other property.*

      **Response:  Response:  Taanen objects to such request in that it is excessive, overly broad and not relevant.**

8

DOCUMENT REQUEST NO. 29: *Any documents related to the EIN number and entity number or other number/code identifying the version of Taanen, LP that filed for bankruptcy protection in this case number 19-24016. (Taanen, LP was formed and dissolved multiple times and received different numbers each time).*

**Response:  Taanen objects to such request as vague and ambiguous and not relevant looking past four years.  Taanen further responds that assuming it understands what the request desires, any such documents have already been produced to Creditor in previous proceedings or are otherwise already in Creditor's possession.**

DOCUMENT REQUEST NO. 30: *Documents related to the formation and dissolution of each of the multiple versions of Taanen, LP that was formed by Tamio Stehrenberger and/or Anna Stehrenberger and/or Enzo Stehrenberger at any time (whether or not limited to Utah entities or entities in other states or jurisdictions).*

**Response:  Taanen objects to such request as not relevant, vague and ambiguous. Taanen further responds that assuming it understands what the request desires, any such documents have already been produced to Creditor in previous proceedings or are otherwise already in Creditor's possession.**

DOCUMENT REQUEST NO. 31: *Any documents related to overseas or offshore accounts or money or property (including intangible property, including rights to receive payment) held outside the United States related to any money received by any version of Taanen, LP during its existence.*

**Response:  No such documents exist.  Further, Taanen objects to such request as excessive, vague and ambiguous.**

DOCUMENT REQUEST NO. 32: *Any documents related to overseas or offshore accounts or money or property (including intangible property, including rights to receive payment) held outside the United States related to any money paid by any version of Taanen, LP during its existence. 29. Any documents related to any real property in which any version of Taanen, LP has or had an interest at any time.*

**Response:  Taanen objects to such request as excessive, vague and ambiguous. Taanen further responds that assuming it understands what the request desires, no such documents exist.**

DOCUMENT REQUEST NO. 33: *Any documents related to any money or property received by any version of Taanen, LP related to Tamio Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.*

**Response:  Taanen objects to such request in that it calls for documents that may not be in the custody of Debtor, and is excessive, vague, ambiguous and not relevant, and requests for information on persons not the Debtor.  After engaging in diligent search and**

9

reasonable inquiry, Taanen responds that any such documents as Debtor understands the request have been produced to Creditor in previous proceedings or are otherwise already had by Creditor.

DOCUMENT REQUEST NO. 34: *Any documents related to any money or property received by any version of Taanen, LP related to Anna Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.*

   **Response:  Taanen objects to such request in that it calls for documents that may not be in the custody of Debtor, and is excessive, vague, ambiguous and not relevant and requests for information on persons not the Debtor.  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents as Debtor understands the request have already been produced to Creditor in previous proceedings or are otherwise already had by Creditor.**

DOCUMENT REQUEST NO. 35: *Any documents related to any money or property received by any version of Taanen, LP related to Enzo Stehrenberger, Adar Bays, Amalfi Coast, JMJ, LG Financial, and/or any other person or entity.*

   **Response:  Taanen objects to such request in that it calls for documents that may not be in the custody of Debtor, and is excessive, vague, ambiguous and not relevant and requests for information on persons not the Debtor.  After engaging in diligent search and reasonable inquiry, Taanen responds that any such documents as Debtor understand the request have already been produced to Creditor in previous proceedings or are otherwise already had by Creditor.**

DOCUMENT REQUEST NO. 36: *Any documents related to any money or property disbursed or transferred out of any version of Taanen, LP that resulted in its accounts or holdings being reduced to zero or any other amount upon which the decision to file for bankruptcy protection was based.*

   **Response:  Taanen objects to such request as it is vague, ambiguous and not relevant.   Taanen further objects in that the request is excessive and unduly and overly burdensome.**

Dated: August 16, 2019

      LAW OFFICE OF CHRIS L. ANDRUS PLLC


      /s/ Chris Andrus

      _____

      CHRIS ANDRUS
      Attorney for Debtor

# EXHIBIT C

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **UTAH**

In re **TAANEN, LP**                                  Case No. **19-24016**

_____ Debtor

Chapter    **7**

## SUBPOENA FOR RULE 2004 EXAMINATION

To: **TAMIO STEHRENBERGER**

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36)**

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7·23·19

CLERK OF COURT

OR

_____                         _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_____ , who issues or requests this subpoena, are:

USBC  350 S. Main #301  SLC  UT 84101     801·524-6687

#### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

*NOTICE OF SUBPOENA*

B2540 (Form 2540 – Subp

SEPT 10 @ NOON }
SEPT 25 @ NOON } WESTLAKE VILLAGE, CA
SEPT 26 @ NOON

In re **TAANEN**

PLEASE EMAIL ASAP IF QUESTIONS
AND TO CONFIRM ATTENDANCE OF
WITNESSES AND PRODUCTION OF DOCS.
THANKS!

EMAIL: DOCUMENT.REQUEST@GMAIL.COM

To: **TAMIO ST**

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE          Office Evolution | DATE AND TIME |
|---|---|
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 | **September 10, 2019** |
| **IMPORTANT: text (206) 229-4415 to confirm directions and** | **12:00 noon Pacific** |
| to request confirmation prior to driving to location | |

The examination will be recorded by this method:   **Audio and/or audiovisual recording**

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9.23.19

CLERK OF COURT

OR

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

USBC  350 S. Main #301  SLC  Ut  84101   801-524-6687

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

### District of  UTAH

In re  TAANEN, LP

Debtor

Case No.  19-24016

Chapter   7

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  TAMIO STEHRENBERGER

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE          Office Evolution | DATE AND TIME |
|---|---|
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 | September 10, 2019 |
| **IMPORTANT: text (206) 229-4415 to confirm directions and | 12:00 noon Pacific |
| to request confirmation prior to driving to location | |

The examination will be recorded by this method:  **Audio and/or audiovisual recording**

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7-23-19

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

OR

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____ , who issues or requests this subpoena, are:

USBC   350 S Main #301   SLC   Ut   84101         801-524-6087

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of __UTAH__

In re __TAANEN, LP__                         Case No. __19-24016__

Debtor

Chapter __7__

## SUBPOENA FOR RULE 2004 EXAMINATION

To: __ENZO STEHRENBERGER__

*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE                     Office Evolution | DATE AND TIME     September 10, 2019, |
|---|---|
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 | 12:00 noon Pacific |
| **IMPORTANT: text (206) 229-4415 to confirm directions and | ** NOTE: May need to wait for other exams |
| to request confirmation prior to driving to location | to conclude first |

The examination will be recorded by this method: __Audio and/or audiovisual recording__

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __7/23/19__

CLERK OF COURT

_____        OR        _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

__USBC   350 S Main #301, SLC  Ut. 84101   801-524-6687__

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of  UTAH

In re  TAANEN, LP

_____
Debtor

Case No.  19-24016

Chapter  7

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  TAMIO STEHRENBERGER
_____
*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE    Office Evolution<br>30721 Russell Ranch Rd #140, Westlake Village, CA 91362<br>**IMPORTANT: text (206) 229-4415 to confirm directions and<br>to request confirmation prior to driving to location | DATE AND TIME<br>Wednesday, September 25, 2019<br>12:00 noon Pacific |
|---|---|

The examination will be recorded by this method:  Audio and/or audiovisual recording

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7-23-19

CLERK OF COURT

*Sondra Lange*
_____        OR        _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_____, who issues or requests this subpoena, are:

USBC  350 S Main #301  SLC  Ut  84101        801-524-6087

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

### District of  UTAH

In re  TAANEN, LP                                          Case No.  19-24016
_____
Debtor

Chapter    7

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   ENZO STEHRENBERGER
_____
*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE                Office Evolution | DATE AND TIME |
| --- | --- |
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 | Wednesday, September 25, 2019, |
| **IMPORTANT: text (206) 229-4415 to confirm directions and | 12:00 noon Pacific |
| to request confirmation prior to driving to location | ** NOTE: May need to wait for other exams to conclude first |

The examination will be recorded by this method:   Audio and/or audiovisual recording

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7/23/19

CLERK OF COURT

*Marsha Cardona*                                  OR
_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_____ who issues or requests this subpoena, are:

USBC  350 S Main #301, SLC  Ut. 84101  801-524-6687

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **UTAH**

In re **TAANEN, LP**
_____
Debtor

Case No. **19-24016**

Chapter **7**

## SUBPOENA FOR RULE 2004 EXAMINATION

To: **ANNA STEHRENBERGER**
_____
*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Office Evolution<br>30721 Russell Ranch Rd #140, Westlake Village, CA 91362<br>**IMPORTANT: text (206) 229-4415 to confirm directions and to request confirmation prior to driving to location | **Thursday, September 26, 2019**<br>**12:00 noon Pacific** |

The examination will be recorded by this method: **Audio and/or audiovisual recording**

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7-23-19

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*                        OR        _____
                                                                                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_____, who issues or requests this subpoena, are:

USBC  350 S Main #301 SLC Ut 84101   801-524-6687

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT D

## JPMORGAN CHASE BANK, N.A., Respondent,

### v.

## MICHIKO STEHRENBERGER, Appellant.

### No. 73493-8-I.

#### Court of Appeals of Washington, Division One.

Filed: April 25, 2016.

Michiko Stehrenberger (Appearing Pro Se), C/o 1312 N. Monroe Street #122, Spokane, WA, 99201, Counsel for Appellants.

Steven K. Linkon, RCO Legal PS, 13555 Se 36th St. Ste 300, Bellevue, WA, 98006-1489, Fred B. Burnside, Davis Wright Tremaine LLP, 1201 3rd Ave Ste 2200, Seattle, WA, 98101-3045, Hugh Robert Mccullough, Davis Wright Tremaine LLP, 1201 3rd Ave Ste 2200, Seattle, WA, 98101-3045, Counsel for Respondents.

## UNPUBLISHED

RONALD COX, J.

A judge shall disqualify himself or herself from any case in which the judge's impartiality might reasonably be questioned.[1] But the Code of Judicial Conduct does not require a judge to disqualify himself or herself when the judge only has a de minimis economic interest in the case.

Here, Michiko Stehrenberger moved for relief under CR 60(b)(11), seeking to vacate a judgment based on the alleged failure of judges to disqualify themselves from her case. Because the judges had only de minimis interests in the case, the trial court properly denied her CR 60(b)(11) motion. Additionally, the court did not abuse its discretion when it restricted Stehrenberger from filing additional motions without first obtaining the court's leave. We affirm.

In 2007, Stehrenberger executed a promissory note to Washington Mutual. In 2008, Washington Mutual failed, and the Federal Deposit Insurance Corporation placed the bank in receivership. Under a purchase and assumption agreement, JPMorgan purchased all of Washington Mutual's assets, including its loans. In 2010, Stehrenberger defaulted by failing to make payments to JPMorgan under the terms of her promissory note.

In 2011, JPMorgan commenced this action on the delinquent note. Stehrenberger answered and asserted numerous defenses and counterclaims. After extensive discovery by Stehrenberger, JPMorgan moved for summary judgment on the delinquent note and Stehrenberger's counterclaims. The trial court granted JPMorgan's motion.

Stehrenberger appealed, arguing that JPMorgan lacked the authority to enforce the promissory note because it had never physically possessed the original promissory note. This court disagreed and affirmed the judgment in favor of JPMorgan.[2] Stehrenberger petitioned for review, which the supreme court denied.

After the supreme court denied review, Stehrenberger moved for relief from the judgment under CR 60(b)(11). She argued that the trial judge and the panel of judges on this court that decided her prior appeal had violated the Code of Judicial Conduct. Specifically, she claimed they failed to disclose financial interests related to J.P. Morgan Chase and also failed to disqualify themselves from ruling on her case. She also sought to have a different trial judge decide her current motion.

The trial judge declined to assign the motion to another judge. He also denied her motion. The judge determined that her CR 60 motion failed both procedurally and on its merits. Specifically, the court determined that Stehrenberger failed to establish non-disclosure of an economic interest in violation of the Code of Judicial Conduct.

After Stehrenberger filed several additional motions, including motions to subpoena the trial judge and members of this

court who decided her case, the trial judge entered an order restricting Stehrenberger from filing additional motions without the court's leave.

Stehrenberger appeals.

# DISQUALIFICATION

Stehrenberger argues that the trial judge and members of this court were disqualified from ruling on her case. We disagree.

Due process, the appearance of fairness doctrine, and the Code of Judicial Conduct may require that a judge disqualify him or herself from hearing a case under certain circumstances.[3]

"The Due Process Clause [of the federal constitution] entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."[4] But the common law and state codes of judicial conduct generally provide more protection than due process requires.[5] Thus, courts generally resolve questions about judicial impartially without using the constitution.[6]

Under the appearance of fairness doctrine, judges must both be impartial and appear to be impartial.[7] "A judicial proceeding satisfies the appearance of fairness doctrine only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[8] The claimant must submit proof of actual or perceived bias to support an appearance of fairness violation.[9]

Parties may raise an appearance of fairness claim in a CR 60(b)(11) motion.[10] A judge violates the appearance of fairness doctrine by failing to disqualify himself or herself when the Code of Judicial Conduct requires.[11]

Washington's Code of Judicial Conduct provides that judges shall disqualify themselves in "any proceeding in which the judge's impartiality[] might reasonably be questioned."[12] One such circumstance, for example, is where the judge has "has an economic interest[] in the subject matter in controversy or in a party to the proceeding."[13] But this requirement does not apply to de minimis interests.[14]

De minimis interests include:

> (1) an interest in the individual holdings within a mutual or common investment fund; . . . [or]
>
> (3) a deposit in a financial institution or deposits or proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests.[15]

"A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."[16]

If a judge disqualified under this rule discloses the economic interest on the record, the parties may agree that the interest is de minimis and that the judge is qualified.[17]

As a preliminary matter, the trial judge did not abuse his discretion by hearing Stehrenberger's CR 60 motion himself rather than transferring it to a different judge. A trial judge may properly hear a motion that accuses him or her of "violating the appearance of fairness doctrine by presiding over a trial and failing to disclose potential conflicts of interest."[18]

Moreover, the trial judge did not violate the Code of Judicial Conduct. Stehrenberger identified three interests she argued disqualified the trial judge: ownership of Washington Mutual stock, a retirement account that owns JPMorgan securities, and two mortgages/deeds of trust with JPMorgan. These interests are de minimis and do not require recusal or disclosure.

First, the trial judge's Washington Mutual stock was a de minimis interest because there was no evidence that this stock became JPMorgan equity when it purchased Washington Mutual. As explained earlier, Washington Mutual failed and the FDIC placed it in receivership. Any Washington Mutual stock that the trial judge owned presumably became worthless at that point. And as the trial court found, Stehrenberger did not present any evidence to show that this stock, rather than becoming worthless, became equity in JPMorgan when it purchased Washington Mutual from the FDIC.

Second, the trial judge's retirement accounts did not require disqualification in this case. The comments to the Code of Judicial Conduct establish that "interest[s] in the individual holdings within a mutual or common investment fund" are de minimis.[19] Here, the State invests the judge's retirement plan in "a diversified pool of investments" which includes holdings in JPMorgan. Accordingly, the trial judge had only an interest in an individual holding within a common investment fund, which is a de minimis interest.

Finally, the trial judge's mortgages/deeds of trust did not create an economic interest. Financial deposits, "proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests," are de minimis interests. To the extent that a mortgage/deed of trust is a financial interest, it is a similar de minimis interest under this rule. Stehrenberger fails to cite any authority indicating otherwise.

For similar reasons, the panel of judges on this court who decided her prior appeal were not required to either disqualify themselves or disclose economic interests. As explained earlier, any interest in JPMorgan through the judicial retirement plan is de minimis. Likewise, the appellate judges' mortgages/deeds of trust did not require recusal.

The only other financial interest Stehrenberger identified was one of the appellate judge's ownership of a JPMorgan bond. This interest was also de minimis. That judge's public disclosure forms indicate ownership of a JPMorgan bond valued between $4,000 and $19,999. Under the circumstances of this case, this bond was insufficient for that judge's impartiality to "reasonably be questioned."[20] This case involved a $50,000 promissory note on which Stehrenberger owed $46,598.53. Given JPMorgan's size, there was no reasonable possibility that an adverse ruling on this case would impact JPMorgan's finances to such an extent as to put it at risk of default on its bond obligations. This possibility was so remote that the appellate judge had no more than a de minimis economic interest.

In sum, neither the trial judge nor the panel of this court violated the Code of Judicial Conduct.

Under the facts of this case, determining whether the Code of Judicial Conduct was violated also resolves whether there was either a violation of due process or the appearance of fairness.

Due process requires recusal only in "extraordinary situation[s]."[21] Here, the de minimis financial interests Stehrenberger identifies are not an extraordinary situation. Rather, the Code of Judicial Conduct "provide[s] more protection than due process requires" on this issue.[22]

Similarly, there is no violation of the appearance of fairness doctrine. Just as the de minimis interests are insufficient to create a situation where the judges' impartiality is reasonably questioned, these interests are also insufficient to violate the appearance of fairness doctrine. "[A] reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[23]

Thus, the trial court properly denied Stehrenberger's CR 60(b)(11) motion. Because of our resolution on this issue, we decline to reach the parties' arguments about whether Stehrenberger complied with that rule's procedural requirements.

Stehrenberger argues that retirement plans with holdings in JPMorgan are not de minimis interests because the judges' decision could "substantially affect[]" these interests. Specifically, she argues that the decision in her case could "impact [JPMorgan's] ability to collect on a bulk of other Washington Mutual-related assets."

The record does not support this argument. Stehrenberger's argument was that JPMorgan could not enforce the note because it had never physically possessed it.[24] JPMorgan was required to prove that Washington Mutual had possessed the note, not transferred the note to anyone else, and that the note's whereabouts could not be determined.[25] Thus, Stehrenberger's case was factintensive and unlikely to affect other assets received from Washington Mutual.

Stehrenberger also relies on Tumey v. Ohio[26] to argue that the interests in this case were not de minimis. But that case is distinguishable. In Tumey, a mayor who adjudicated cases received a $12 salary supplement for convictions, but no supplement for acquittals.[27] Additionally, fines imposed by the mayor funded the village government, which the mayor ran.[28] Thus, in Tumey, the financial interest was direct—the mayor received the salary supplement only for a conviction.

In contrast, for the reasons explained earlier, the financial interests in this case are so attenuated as to be de minimis.

## FILING RESTRICTION

Stehrenberger argues that the court abused its discretion by ordering her not to file additional motions without the court's leave. We disagree.

Courts have discretion to impose "reasonable restrictions on any litigant who abuses the judicial process."[29] Although due process provides a right to access the courts, this right is not unlimited.[30] Courts "`are mindful of the need for judicial finality and the potential for abuse of this revered system by those who would flood the courts with repetitive, frivolous claims which already have been adjudicated at least once.'"[31]

But mere proof of litigiousness does not support imposing filing restrictions.[32] Additionally, trial courts "`must be careful not to issue a more comprehensive injunction than is necessary to remedy proven abuses, and if appropriate the court should consider less drastic remedies.'"[33]

Here, the trial court did not abuse its discretion in imposing filing restrictions on Stehrenberger. As the court noted, her case had been decided on the merits and affirmed on appeal. After her appeal, the trial court had denied her post judgment motions. After this denial, she moved to subpoena the trial judge and the panel of this court who decided her case on appeal. The trial court determined that these continued post judgment motions were "without legal or factual basis [and] constitute[d] abuse of the judicial process."

As the court noted, Stehrenberger had received her day in court. And because JPMorgan had consistently received awards of attorney fees, the trial court could reasonably conclude that attorney fees were an insufficient sanction to deter frivolous filings.[34] Accordingly, requiring the court's leave to file additional motions was a reasonable restriction.

## ATTORNEY FEES

Both parties seek attorney fees on appeal. We conclude that JPMorgan is entitled to an award of attorney fees on appeal.

Parties in Washington may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[35] Here, the promissory note provides for attorney fees in an action to enforce the note. Because JPMorgan prevails, it is entitled to an award of attorney fees on appeal, subject to compliance with RAP 18.1.

We affirm the superior court's orders and award JPMorgan attorney fees on appeal, subject to its compliance with RAP 18.1.

STEPHEN J. DWYER, J., and ANN SCHINDLER, JJ., concur.

[1] CJC 2.11(A).

[2] JPMorgan Chase Bank, N.A. v. Stehrenberger, noted at 180 Wn. App. 1047, 2014 WL 1711765, review denied, 337 P.3d 325 (2014).

[3] In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009).

[4] Tatham v. Rogers, 170 Wn. App. 76, 90, 283 P.3d 583 (2012) (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)).

[5] Id.,

[6] Id., at 92.

[7] Id., at 80.

[8] Id., at 96.

[9] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 154, 317 P.3d 1074 (quoting Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007)), rev'd on other grounds, 167 Wn.2d 570, 220 P.3d 191 (2009).

[10] Camarata v. Kittitas County, 186 Wn. App. 695, 713, 346 P.3d 822 (2015).

[11] Tatham, 170 Wn. App. at 94.

[12] CJC 2.11(A).

[13] CJC 2.11(A)(3).

[14] CJC 2.11 cmt. 6.

[15] Id.

[16] CJC 2.11 cmt. 5.

[17] CJC 2.11(C).

[18] Tatham, 170 Wn. App. at 88-89.

[19] CJC 2.11 cmt. 6(1).

[20] CJC 2.11(A).

[21] Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 887, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

[22] Id. at 890.

[23] Tatham, 170 Wn. App. at 96.

[24] JPMorgan Chase Bank, N.A., 2014 WL 1711765 at *3.

[25] Id.

[26] 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).

[27] Tumey, 273 U.S. at 523.

[28] Id. at 533.

[29] In re Marriage of Giordano, 57 Wn. App. 74, 78, 787 P.2d 51 (1990).

[30] Yurtis v. Phipps, 143 Wn. App. 680, 694, 181 P.3d 849 (2008).

[31] Id. at 693 (quoting In re Pers. Restraint of LaLande, 30 Wn. App. 402, 405, 634 P.2d 895 (1981)).

[32] Id.

[33] Id. (quoting Whatcom County v. Kane, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981)).

[34] See Stehrenberger, 2014 WL 1711765 at *6.

[35] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).

Save trees - read court opinions online on Google Scholar.

# EXHIBIT E

## JPMORGAN CHASE BANK, N.A., Respondent,

### v.

## MICHIKO STEHRENBERGER, Appellant.

<u>No. 70295-5-I.</u>

### Court of Appeals of Washington, Division One.

Filed: April 28, 2014.

Michiko Stehrenberger (Appearing Pro Se), 215 S. Idaho St., Post Falls, ID, 83854, Counsel for Appellant(s).

Steven K. Linkon, Routh Crabtree Olsen PS, 13555 Se 36th St. Ste. 300, Bellevue, WA, 98006-1489; Fred B. Burnside, Davis Wright Tremaine LLP, 1201 3rd Ave. Ste. 2200, Seattle, WA, 98101-3045, Rebecca J. Francis, Davis Wright Tremaine LLP, 1201 3rd Ave. Ste. 2200, Seattle, WA, 98101-3047, Counsel for Respondent(s).

## UNPUBLISHED

COX, J.

Michiko Stehrenberger appeals the grant of summary judgment in favor of JPMorgan Chase Bank, N.A. (Chase) to enforce her admittedly delinquent loan obligation. Because Chase has the authority to enforce the note as the transferee of Washington Mutual Bank's (WaMu) assets, we affirm.

On September 11, 2007, Stehrenberger executed a promissory note in the amount of $50,000 to WaMu.

On September 25, 2008, WaMu failed, and the Federal Deposit Insurance Corporation placed the bank in receivership. Under a purchase and assumption agreement, Chase purchased all of WaMu's assets. The FDIC, as receiver, assigned to Chase "all right, title, and interest of the Receiver in and to all of the assets [of WaMu]." The agreement expressly included loans among the transferred assets. Chase received an electronic record generated by WaMu of the loan disbursements and payments made by Stehrenberger.

In 2010, Stehrenberger admittedly defaulted by failing to make payments to Chase. She claimed that the FDIC did not execute an assignment identifying her loan when it transferred WaMu's assets to Chase. She also claims that Chase did not have possession of the original note.

In 2011, Chase commenced this action on the delinquent note. Stehrenberger answered and asserted numerous defenses and counterclaims. The trial court granted Chase's motion to dismiss for some of the counterclaims. The trial court denied Stehrenberger's motion for reconsideration.

After extensive discovery by Stehrenberger, Chase moved for summary judgment on the delinquent note and Stehrenberger's unjust enrichment and Consumer Protection Act counterclaims. Stehrenberger moved for declaratory relief or partial summary judgment.

The trial court granted Chase's motion and dismissed the remaining counterclaims. It did so notwithstanding that Chase does not have possession of the original note. Chase does have copies, showing the terms of the note.

The trial court stated that Chase is owed $46,598.53 and past-due interest of $2,810.79 under the promissory note. Additionally, the trial court explained that Stehrenberger's motions were moot. The trial court denied Stehrenberger's motion for reconsideration.

Stehrenberger then sought "adequate protection" to guard against a third party attempting to enforce the lost promissory note. The trial court denied this motion.

The trial court also granted Chase's motion for attorney fees as prevailing party under the note. It awarded $98,446.76 in

attorney fees "in light of [Stehrenberger's] protracted defense of this matter." Stehrenberger appeals.

# AUTHORITY TO ENFORCE PROMISSORY NOTE

Stehrenberger argues that the trial court erred when it granted summary judgment to Chase. Specifically, she argues that Chase did not have the authority to enforce the promissory note because it never had physical possession of the original promissory note. We disagree.

Summary judgment decisions are reviewed de novo.[1] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[2]

Under 12 U.S.C. § 1821(d)(2)(G)(i)(II), the FDIC has the authority to "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer."

Here, the FDIC transferred all of WaMu's loans and loan commitments to Chase pursuant to a purchase and assumption agreement dated September 25, 2008. The agreement used broad language to describe the transfer of all of the failed bank's assets:

> Subject to Sections 3.5, 3.6 and 4.8, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to *all of the assets* (real, personal and mixed, *wherever located and however acquired*) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing.[3]

Given this broad language, Stehrenberger's promissory note is among the assets transferred to Chase.

There is no dispute that Stehrenberger's note is a negotiable instrument under Washington's Uniform Commercial Code (UCC). Accordingly, we look first to the UCC to determine whether Chase had the authority to enforce the note.

In Federal Financial Co. v. Gerard, this court explained that RCW 62A.3-203(b) sets out the rights of an assignee of a note:

> "*Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument,* including any right as a holder in due court, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."[4]

This court concluded that "the unambiguous language of the above statutory provision supports the conclusion that the assignment of a note by the FDIC carries with it the right to enforce the instrument."[5] This court explained that this conclusion is consistent with "the policy of the Code that promotes a free market for negotiable instruments" and "Washington's common law respecting assignability of contract rights."[6]

Here, in accordance with Gerard, the FDIC's transfer of all assets of the failed bank to Chase carried with it the authority to enforce Stehrenberger's note. This is because Chase purchased *all* of WaMu's assets as shown by the purchase and assumption agreement.

Stehrenberger makes a number of arguments to challenge Chase's authority to enforce her promissory note. None are persuasive.

First, her primary argument is based on the Washington UCC provision that discusses the enforcement of lost, destroyed, or stolen instruments. Specifically, she contends that RCW 62A.3-309(a) required Chase to have physical possession of the original promissory note in order to enforce it. Because Chase admits that it never had physical possession of the note, she contends that Chase did not have the authority to enforce the note. We disagree.

RCW 62A.3-301 explains who is entitled to enforce a negotiable instrument:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) *a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309* or 62A.3-418(d).[[7]]

If a person is not in possession of the instrument, RCW 62A.3-309 explains when lost, destroyed, or stolen instruments may be enforced. There are number of requirements stated in two subsections of this statute. The first subsection provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.[[8]]

As a United States bankruptcy panel of the Ninth Circuit explained, "The plain meaning of RCW 62A.3-309(a) is that a person no longer in possession of an instrument is nonetheless entitled to enforce it if that person was in possession and entitled to enforce it when the loss of possession occurred."[[9]]

Since Chase admits that it never had possession of the original note, the issue is whether Chase can meet the requirements of RCW 62A.3-309(a). Because Chase purchased all of WaMu's assets and the rights that come along with them, Chase steps into the shoes of WaMu and can meet the statutory requirements in WaMu's capacity. As Chase argues, it proved the three requirements:

> WaMu possessed the Note and was entitled to enforce it because Stehrenberger admits signing the instrument and leaving it with WaMu (satisfying the first element). CP 249 ¶ 64. Stehrenberger presented no evidence on summary judgment (and none exists) showing WaMu transferred the Note to anyone except Chase, who bought the Note from the FDIC, as receiver (satisfying the second element). If WaMu lost the Note, then it is a tautology that the Note's whereabouts could not be determined (satisfying the third element). Accordingly, WaMu was entitled to enforce the Note, and Chase bought all the rights of WaMu, including the right to enforce the Note. See Gerard, 90 Wn. App. at 183.[[10]]

There is nothing in RCW 62A.3-309 that prohibited a lost, destroyed, or stolen instrument from being transferred to Chase. Thus, subsection (a) of RCW 62A.3-309 is not a barrier to Chase enforcing Stehrenberger's note.

Additionally, "Subsection (b) requires a proponent under subsection (a) to prove the terms of the instrument, *e.g.,* via a Lost Note Affidavit."[[11]] Chase met the requirements of the second subsection, RCW 62A.3-309(b), which states:

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, RCW 62A.3-308 applies to the case as if the person seeking enforcement had produced the instrument.

Chase was able to prove the terms of the instrument by producing a true and correct copy of the instrument. Moreover, as previously discussed, Chase is entitled to enforce the instrument as the transferee of WaMu's assets.

Stehrenberger cites several cases from other jurisdictions, including <u>Dennis Joslin Co. v. Robinson</u> Broadcasting Corp.[[12]] These cases suggest that an assignee may not enforce a note that was lost, destroyed, or stolen *before* assignment.[[13]] But these extrajurisidictional cases do not control this case. Here, Chase is able to enforce the note because it purchased all of WaMu's assets and can fulfill the requirements of RCW 62A.3-309 in WaMu's capacity.

Second, Stehrenberger argues that Chase did not prove the elements of RCW 62A.3-309 because it did not produce a "lost note affidavit." But she fails to cite authority that a "lost note affidavit" is needed to prove the elements of RCW 62A.3-309. As previously discussed, Chase pointed to evidence that proves that the statutory requirements were met. It does not matter that they were not contained in a "lost note affidavit."

Third, Stehrenberger contends that even if Chase is the "owner" of the note "proof of *direct* physical possession by the `person seeking to enforce' is still required to be able to enforce a note that is a negotiable instrument." Because the previous analysis does not hinge upon whether Chase is the "owner" of the note, we need not address this argument.

Fourth, Stehrenberger asserts that Chase did not acquire WaMu's assets by operation of law. But the prior analysis does not make such assertion. Rather, the transfer was made pursuant to a purchase and assumption agreement. Thus, this argument is not relevant.

Fifth, Stehrenberger argues that "[u]nder RCW 5.46.010 a mere copy of a negotiable instrument is not admissible in place of the original for the purpose of seeking enforcing payment upon it." But that statute addresses evidentiary issues, not the UCC. It states that copies of business records are admissible.[14] Thus, this argument is not persuasive.

Sixth, Stehrenberger, in her reply brief, makes a number of arguments challenging the validity of the purchase and assumption agreement between the FDIC, as receiver of WaMu, and Chase. She cites Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC to assert that she has standing to challenge the assignment as an "obligor."[15] But, as that case explains, Stehrenberger does not have standing to challenge the assignment to which she was not party because she is not at risk for having to pay the debt twice.[16] Thus, these arguments are not persuasive.

Because the trial court properly granted summary judgment in favor of Chase, we deny Stehrenberger's request that we reverse the dismissal of her unjust enrichment and Consumer Protection Act claims.

Chase also asserts that we may affirm the trial court based on res judicata. Given our previous discussion, we need not to rely on this basis.

# ADEQUATE PROTECTION

Stehrenberger next argues that the trial court abused its discretion when it denied her CR 59 motion to amend the judgment to provide her with adequate protection against a third party from enforcing the promissory note. We disagree.

RCW 62A.3-309(b) provides an adequate protection requirement when a person seeks to enforce a lost, destroyed, or stolen instrument:

> The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

CR 59(h) authorizes the trial court to alter or amend a judgment if a motion is brought within 10 days. This court reviews a trial court's denial of a CR 59 motion to amend judgment for abuse of discretion.[17]

Here, the trial court did not abuse its discretion in denying the motion to amend. Stehrenberger's promissory note was payable to WaMu, and Chase is now the only entity that can enforce WaMu's loans. There is no evidence that she is at risk of having any entity other than Chase attempt to enforce the loan. Given this low risk, the trial court did not abuse its discretion when it denied the CR 59 motion.

# ATTORNEY FEES

Finally, Stehrenberger asserts that the trial court abused its discretion when it awarded Chase $98,446.76 in attorney fees as the prevailing party under the promissory note. Specifically, she argues that the trial court did not consider her objections to Chase's billings. We disagree.

Under RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs as provided by the contract.[18] As the parties agree, the promissory note provides that the bank is entitled to attorney fees and costs. RCW 4.84.330 makes this unilateral provision bilateral. Thus, the "prevailing party" is entitled to an award.

We review the amount of an attorney fee award for an abuse of discretion.[19]

Stehrenberger does not dispute that Chase was the prevailing party in the trial court. Rather, she contends that the trial court did not consider her "opposition and objections, identifying specific items on Chase's billings that [she] asserted were improperly billed as a result of wasteful or duplicative activities unnecessary for the prosecution of the case."

But in the order granting attorney fees to Chase, the trial court stated that it "reviewed the motion and the pleadings filed herein," which would include Stehrenberger's "Amended Opposition to Plaintiff JPMorgan Chase Bank, N.A.'s Motion to Fix Attorney Fees as Costs of Suit." Additionally, the trial court stated that the amount of fees and costs was "reasonable and necessary to prosecute plaintiff's claims in light of defendant's protracted defense of this matter." Given these statements in the order, the trial court considered Stehrenberger's objections to the attorney fees and thus it did not abuse its discretion when it made the award.

Both parties request attorney fees if they are the prevailing party on appeal. Because Chase is the prevailing party on appeal, it is entitled to fees and costs, subject to its compliance with RAP 18.1.

We affirm the grant of summary judgment and award reasonable attorney fees to Chase, subject to its compliance with RAP 18.1.

[1] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

[2] CR 56(c).

[3] Clerk's Papers at 621, 633 (emphasis added).

[4] 90 Wn. App. 169, 176-77, 949 P.2d 412 (1998) (quoting RCW 62A.3-203(b)).

[5] Id. at 177.

[6] Id.

[7] (Emphasis added.)

[8] RCW 62A.3-309(a).

[9] In re Allen, 472 B.R. 559, 566 (B.A.P. 9th Cir. 2012).

[10] Brief of Respondent-Plaintiff JPMorgan Chase Bank, N.A. at 28-29.

[11] In re Allen, 472 B.R. at 566.

[12] Amended Brief of Appellant at 21-24 (citing Dennis Joslin Co., LLC v. Robinson Broad. Corp., 977 F. Supp. 491 (D.D.C. 1997); McKay v. Capital Res. Co., Ltd., 327 Ark. 737, 940 S.W.2d 869 (Ark. 1997); State Street Bank and Trust Co. v. Lord, 851 So.2d 790 (Fla. Dist. Ct. App. 2003)); see also Appellant's Statement of Additional Authority (citing In re Harborhouse of Gloucester, 505 B.R. 365 (Bankr. D. Mass. 2014)).

[13] Dennis Joslin Co., LLC, 977 F. Supp. at 495; McKay, 327 Ark. at 740-41; State Street Bank and Trust Co., 851 So.2d at 792; In re Harborhouse of Gloucester, 505 B.R. at 371-72.

[14] RCW 5.46.010.

[15] Reply Brief of Appellant at 10 (citing Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 Fed. Appx. 97, 102 (6th Cir. 2010)).

[16] Livonia Props. Holdings, LLC, 399 Fed. Appx. at 102.

[17] Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010).

[18] Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989).

[19] Morgan v. Kingen, 166 Wn.2d 526, 539, 210 P.3d 995 (2009).

Save trees - read court opinions online on Google Scholar.

# EXHIBIT F

No. 73493-8

IN THE COURT OF APPEALS
OF THE STATE OF WASHINGTON
DIVISION I

_____

MICHIKO STEHRENBERGER,

Appellant,

v.

JPMORGAN CHASE BANK, N.A.,

Respondent.

_____

BRIEF OF RESPONDENT
JPMORGAN CHASE BANK, N.A.

_____

Fred Burnside, WSBA No. 32491
Hugh McCullough, WSBA No. 41453
Davis Wright Tremaine LLP
Attorneys for JPMorgan Chase Bank, N.A.

1201 Third Avenue, Suite 2200
Seattle, Washington 98101
206-622-3150



## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II.     STATEMENT OF ISSUES ......................................................... 1

III.    STATEMENT OF THE CASE.................................................... 2

IV.     STANDARD OF REVIEW ....................................................... 5

V.      ARGUMENT ...................................................................... 5

        A.      Judge Erlick was not required to recuse himself from this case. ..... 5

        B.      The Superior Court properly declined to vacate or revise its prior
                orders under CR 59 and CR 60. ...................................................... 8

        C.      The Superior Court properly barred Stehrenberger from further
                frivolous filings. ............................................................................. 9

        D.      The Court should award Chase its fees and costs. ........................ 10

        VI.     CONCLUSION.............................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyd v. Davis,*
    127 Wn.2d 256 (1995) ........................................................................11

*Flannagan v. Flannagan,*
    42 Wn. App. 214 (1985) ....................................................................8

*JPMorgan Chase Bank, N.A. v. Stehrenberger,*
    No. 70295-5-I, slip op. (Wn. Ct. App. April 28, 2014) ....................3, 7

*Kok v. Tacoma Sch. Dist. No. 10,*
    179 Wn. App. 10 (2013) ....................................................................6

*Lane v. Brown & Haley,*
    81 Wn. App. 102 (1996) ....................................................................5

*In re Marriage of Farr,*
    87 Wn. App. 177 (1997) ....................................................................5

*Martin v. Johnson,*
    141 Wn. App. 611 (2007) ..................................................................10

*Metz v. Sarandos,*
    91 Wn. App. 357 (1998) ....................................................................8

*Rivers v. Wash. State Conf. of Mason Contractors,*
    145 Wn.2d 674 (2002) ......................................................................5

*Tatham v. Rogers,*
    170 Wn. App. 76 (2012) ....................................................................8

*Townsend v. BAC Home Loans Serv., L.P.,*
    461 F. App'x 367 (5th Cir. 2011) ......................................................6

*In re U.S.,*
    158 F.3d 26 (1st Cir. 1998) ................................................................6

DWT 27838047v2 0036234-000284

*Wolfkill Feed & Fertilizer Corp. v. Martin*,
   103 Wn. App. 836 (2000) ....................................................................5

*In re Zow*,
   2013 WL 445385 (Bankr. S.D. Ga. Jan. 24, 2013) ...............................6

**Statutes**

RCW 4.84.330 ..........................................................................3, 10, 11

RCW 62A.3-309(a) .........................................................................3

**Other Authorities**

CJC 2.11 ....................................................................................6, 7

CR 4 ............................................................................................9

CR 59 ................................................................................. *passim*

CR 60 ................................................................................. *passim*

RAP 18.1 ...............................................................................3, 10

iii

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Stehrenberger's latest appeal is part of an extended litigation campaign she started shortly after she first defaulted on a loan. The Court should affirm the Superior Court's order denying Michiko Stehrenberger's motion for recusal and to vacate prior orders entered by the Superior Court and by this Court, and should affirm the Court's other orders.

*First*, the Honorable John P. Erlick was neither required to recuse himself nor to make additional disclosures with respect to de minimis relationships with various financial institutions, some of whom are not even parties to this lawsuit.

*Second*, Stehrenberger hasn't identified any reason to set aside the Superior Court's rulings under CR 59, CR 60, or otherwise.

*Third*, the Superior Court properly barred Stehrenberger from continuing her vexatious campaign of litigation with further attacks on the judiciary.

*Fourth*, the Court should award Chase its fees and costs in connection with this appeal.

## II.   STATEMENT OF ISSUES

1.     Should Judge Erlick, and members of this Court, have recused themselves because of trivial dealings with various financial institutions, including some that are not even parties to this case?

2.      Should the Superior Court have vacated or revised its prior

orders under CR 59 and CR 60 based on Stehrenberger's allegations of

judicial misconduct?

3.      Did the Superior Court properly bar Stehrenberger from

continuing her vexatious litigation campaign?

4.      Should this Court award Chase its fees and costs in

responding to this appeal?

### III.    STATEMENT OF THE CASE

In 2007, Stehrenberger obtained a $50,000 unsecured commercial

line of credit from Washington Mutual Bank. Chase later acquired

Stehrenberger's loan from the FDIC, as receiver for Washington Mutual

Bank. (CP 392 ¶ 2; CP 548 ¶ 70; CP 1131; *see also* CP 911, 939; CP 487;

CP 1125.)

In 2010, Stehrenberger stopped making payments on her loan,

even though she admits owing money on the loan. (CP 321 ¶ 4, *see also*

CP 1115 ¶ 7; CP 1159.) By February 4, 2011, Stehrenberger owed Chase

approximately $47,600, including principal, overdue interest, and fees.

(CP 302 ¶ 11.)

Due to Stehrenberger's default, Chase filed this breach of contract

lawsuit. Stehrenberger litigated aggressively for years, filing many

motions and declarations and serving hundreds of discovery requests on

2

Chase. (CP 553-54; CP 1211.) Nevertheless, the Superior Court entered

summary judgment for Chase (CP 1184-94) and denied Stehrenberger's

motion to amend the judgment (CP 1221; CP 1217-18). The Superior

Court also awarded Chase its fees under Stehrenberger's promissory note

and RCW 4.84.330. (CP 1222-23.)

This Court affirmed the Superior Court because Chase is entitled to

enforce Stehrenberger's promises under RCW 62A.3-309(a). This Court

explained that "in accordance with *Gerard*, the FDIC's transfer of all

assets of the failed bank to Chase carried with it the authority to enforce

Stehrenberger's note. This is because Chase purchased *all* of WaMu's

assets as shown by the purchase and assumption agreement." *JPMorgan

Chase Bank, N.A. v. Stehrenberger*, No. 70295-5-I, slip op. at 5 (Wn. Ct.

App. April 28, 2014) (emphasis in original). The Court also found the

Superior Court did not abuse its discretion in awarding attorneys' fees, and

granted Chase its fees and costs on appeal, subject to compliance with

RAP 18.1. *Id.* at 11-12.

Stehrenberger filed a petition for review with the Washington

Supreme Court. The Washington Supreme Court denied that petition and

awarded Chase its fees and costs in the amount of $7,287.22.

Stehrenberger then filed a motion asking the Washington Supreme Court

3

to stay its order awarding Chase its fees and costs. The Supreme Court denied that motion, too.

Unsatisfied, Stehrenberger returned to the Superior Court and filed a motion to set aside the judgment under CR 59 and 60, alleging "new evidence" that the Washington judiciary is biased against her. Stehrenberger alleged Judge Erlick owned Washington Mutual stock. (*See* CP 1354 at 2:17-18.) Notably, Washington Mutual is not and never has been a party to this case. Stehrenberger also alleged that Judge Erlick owned Chase securities through his retirement accounts and mutual funds. (CP 1354 at 2:18-19.) Finally, Stehrenberger alleged that Judge Erlick borrowed money from Chase in connection with various mortgages. (CP 1355 at 3:2-6.)

But that's not all. Stehrenberger made similar accusations against members of this Court: the Honorable Ronald E. Cox, the Honorable Linda Lau, and the Honorable Ann Schindler. In this appeal, she repeats those accusations, and insists that the Court must overturn the prior judgment because their investments raise a "public question as to the impartiality of these judges in these proceedings." (Appellant's Br. 11.)

The Superior Court properly denied Stehrenberger's motions under CR 59 and 60, and barred Stehrenberger from continuing her vexatious litigation. This appeal followed.

4

## IV.    STANDARD OF REVIEW

"A motion for reconsideration and motion to vacate a dismissal are
to be decided by the trial court in exercise of its discretion and its decision
will be overturned only if the court abused its discretion." *Rivers v. Wash.
State Conf. of Mason Contractors*, 145 Wn.2d 674, 685 (2002).
"Discretion is abused when it is exercised on untenable grounds or for
untenable reasons." *Lane v. Brown & Haley*, 81 Wn. App. 102, 105
(1996).

## V.    ARGUMENT

### A.    Judge Erlick was not required to recuse himself from this case.

Judge Erlick did not need to recuse himself from this case based on
de minimis connections with Washington Mutual and Chase. Nor was
Judge Erlick required to make any disclosures with respect to those
purported interests.

Judges are presumed to perform their functions "without bias or
prejudice." *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836,
841 (2000). The burden is on Stehrenberger to show bias or prejudice. *Id*.
"Recusal lies within the sound discretion of the trial court." *In re Marriage
of Farr*, 87 Wn. App. 177, 188-89 (1997).

Judges are not required to disqualify themselves if they have
insignificant economic interests in the parties to the proceeding. *See*

5

CJC 2.11(A)(3); *see also Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 25-26 (2013). Notably, the phrase "economic interest" means "ownership of more than a de minimis legal or equitable interest," and it does not include "an interest in the individual holdings within a mutual or common investment fund." CJC 2.11, cmt. 6.

The federal courts have also explained—in commenting on the companion federal rules—that a judge's impartiality cannot reasonably be questioned just because a judge has a mortgage or a line of credit with one of the parties to the proceeding. *See Townsend v. BAC Home Loans Serv., L.P.*, 461 F. App'x 367 (5th Cir. 2011); *In re U.S.*, 158 F.3d 26, 31-33 (1st Cir. 1998); *In re Zow*, 2013 WL 445385, at *1 (Bankr. S.D. Ga. Jan. 24, 2013) (noting also that "recusal statutes are 'not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice. . . . Nor are they intended to be used as a delay tactic or to prevent the timely consideration of cases and controversies.'").

Judge Erlick's de minimis connections with Washington Mutual and Chase did not even merit disclosure, much less recusal. Washington Mutual is not and never has been a party to this case. The outcome of this case could have no conceivable effect on the value of interests in Washington Mutual. Washington Mutual Bank was liquidated in an FDIC receivership, and the bank's parent company was liquidated in bankruptcy.

6

Just because Chase acquired certain assets of Washington Mutual Bank does not mean that Judge Erlick acquired any interest in Chase. As this Court explained, "WaMu failed, and the Federal Deposit Insurance Corporation placed the bank in receivership." *Stehrenberger*, No. 70295-5-I, slip op. at 1 (Wn. Ct. App. April 28, 2014). Whatever interests Judge Erlick may have had in Washington Mutual stock are presumably worthless. And as the Superior Court noted, Stehrenberger introduced no evidence "that Washington Mutual securities held by Judge Erlick were ever converted to any equity interest in Chase securities." (CP 1365-67.)

Nor did Judge Erlick's connections with Chase require disclosure or recusal. The Code of Judicial Conduct states that general interests in retirement accounts and individual holdings within mutual funds do not require disclosure. CJC 2.11, cmt. 6. If the rule were otherwise, there probably would not be a single judge in the state of Washington that could hear Stehrenberger's case, insofar as each would have a similar interest in the judicial retirement system. Judge Erlick's mortgage loans also did not give rise to any appearance of unfairness or impropriety. Those loans did not give Judge Erlick an "economic interest" in Chase, within the meaning of CJC 2.11. *Id.* In any event, routine mortgage transactions do not give Judge Erlick any reason to be more favorably disposed to Chase.

7

The facts here are far different from the facts in the cases cited by
Stehrenberger. For example, in *Tatham v. Rogers*, the trial court should
have disclosed that the judge and one of the party's attorneys had been
partners in a law firm, that the attorney served as the judge's campaign
manager, and that the judge and the attorney had continuing personal
business with each other. 170 Wn. App. 76, 85 (2012). That is much
different from the de minimis connections identified in Stehrenberger's
motion.

**B.      The Superior Court properly declined to vacate or
revise its prior orders under CR 59 and CR 60.**

Stehrenberger has not provided any valid basis for setting aside the
Superior Court's prior orders under CR 59 or CR 60. CR 59 requires a
motion for a new trial to be brought within 10 days after entry of
judgment. *See* CR 59(b). The Superior Court had no discretion to enlarge
that time, even if it had been inclined to do so. *See Metz v. Sarandos*, 91
Wn. App. 357, 359-60 (1998). Although CR 60 allows more time to set
aside orders, relief under CR 60(b)(11) should be sparingly granted, and
only under extraordinary circumstances. *See Flannagan v. Flannagan*, 42
Wn. App. 214, 221 (1985).

Stehrenberger could not obtain relief under CR 59 because her
motion was filed more than 10 days after judgment was entered.

8

Stehrenberger was also not entitled to relief under CR 60(b) because she did not provide evidence of the extraordinary circumstances necessary to justify relief. Stehrenberger described a series of de minimis connections between Judge Erlick and various financial institutions, some of whom are not even parties to this case. They certainly did not justify setting aside the Superior Court's prior orders under CR 60(b)(11).

Stehrenberger also failed to comply with CR 60(e), which requires a CR 60 motion to be served "in the same manner as in the case of summons in a civil action . . . ." As reflected in her certificate of service, Stehrenberger e-mailed a copy to Chase's attorneys. There is no evidence that they agreed to accept service of process under CR 4—by e-mail or otherwise—on behalf of Chase.

C.   **The Superior Court properly barred Stehrenberger from further frivolous filings.**

The Superior Court recognized that Stehrenberger is a vexatious litigant. Having taken her case all the way up to the Washington Supreme Court, she has apparently decided to start over again by attacking the Superior Court, this Court, and the entire judicial-retirement system. The Superior Court properly recognized that an award of fees was not a sufficient deterrent insofar as the Superior Court, this Court, and the Washington Supreme Court all awarded fees against Stehrenberger before.

9

The Superior Court acted properly and with restraint by barring Stehrenberger from further frivolous filings.

**D.      The Court should award Chase its fees and costs.**

The Court should deny Stehrenberger's request for fees on appeal under RAP 18.1, and should instead award Chase its fees on appeal. "RAP 18.1(a) permits [this Court] to award attorney fees and costs on appeal if applicable law grants a party the right to recovery attorney fees or expenses." *Martin v. Johnson*, 141 Wn. App. 611, 623 (2007). Stehrenberger seeks fees under RCW 4.84.330 and her promissory note. (Appellant's Br. at 31-32.) Stehrenberger effectively concedes she must be a prevailing party to obtain such fees, however. (*See* Appellant's Br. at 32 (citing *Kaintz v. PLG, Inc.*, 147 Wn. App. 782 (2008) (prevailing party in contract action may seek fees even if party prevailed in establishing contract was unenforceable)).) "In general, a prevailing party who is entitled to attorney fees below is entitled to attorney fees . . . if [she] prevails on appeal." *Martin*, 141 Wn. App. at 623. But Stehrenberger did not prevail in the trial court and will not prevail here, so she has no right to seek fees on appeal. *See id.* The Court should therefore deny her fee request.

Meanwhile, the Court should award Chase its fees on appeal. Unlike Stehrenberger, Chase may obtain these fees under RCW 4.84.330

10

because it is the prevailing party and because, as Stehrenberger

acknowledges (*see* Appellant's Br. at 31-32), the note contains a fee

provision, under which she agreed to pay Chase's fees incurred in

collecting on the note. CP 306, 307 (bank and its assigns may seek fees

incurred in collecting on note); CP 392 (Chase acquired WaMu's loans

from FDIC by operation of law under FIRREA). "A provision in a

contract providing for the payment of attorneys' fees in an action to collect

any payment due under the contract includes both fees necessary for trial

and those incurred on appeal as well." *Boyd v. Davis*, 127 Wn.2d 256, 264

(1995) (affirming award of fees on appeal under RCW 4.84.330).

## VI.    CONCLUSION

For the foregoing reasons, the Court should affirm the Superior

Court's order denying Stehrenberger's motion under CR 59 and CR 60,

and each of its other orders. The Court should also award Chase its fees

and costs in responding to this appeal.

11

RESPECTFULLY SUBMITTED this 2nd day of October, 2015.

Davis Wright Tremaine LLP
Attorneys for JPMorgan Chase Bank, N.A.

By _____

Fred Burnside, WSBA No. 32491
Hugh McCullough, WSBA No. 41453

1201 Third Avenue, Suite 2200
Seattle, Washington 98101
206-622-3150

12

## CERTIFICATE OF SERVICE

I certify that on October 2, 2015, I caused the foregoing document to be filed with the clerk of the Court and served on the parties in this manner:

Steven K. Linkon, Esquire
RCO Legal, P.S.
13555 SE 36th Street, Suite 300
Bellevue, WA 98006-1489
*slinkon@rcolegal.com*

☐ Messenger
☒ U.S. Mail, postage prepaid
☐ Federal Express
☐ Fax
☒ Electronic

Ms. Michiko Stehrenberger
215 S. Idaho Street
Post Falls, ID 83854
*document.request@gmail.com*

☐ Messenger
☒ U.S. Mail, postage prepaid
☐ Federal Express
☐ Fax
☒ Electronic

Dated this 2nd day of October, 2015.

_____
MELANIE KENT

13